UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GREAT LAKES ACQUISITION CORP., <br><br> Plaintiff, <br><br> v. <br><br> NATASHA (OGINSKY) SANDERS, <br><br> Defendant. | Case No. _____ <br><br> Hon. _____ |

KIENBAUM HARDY VIVIANO PELTON, & FORREST, P.LC.
By: Eric J. Pelton (P40635)
     Thomas J. Davis (P78626)
     Ryan D. Bohannon (P73394)
Attorneys for Plaintiff
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI 48009
(248) 645-0000
epelton@khvpf.com
tdavis@khvpf.com
rbohannon@khvpf.com

**COMPLAINT**

## JURISDICTION AND PARTIES

1. Plaintiff Great Lakes Acquisition Corp. ("Elara Caring") is incorporated in Delaware and has its principal place of business located in Jackson, Michigan.

2. Defendant Natasha Sanders (formerly Natasha Oginsky) ("Sanders") is a former Elara Caring employee. She is a resident of Virginia. In connection with her employment, she signed an Employment Agreement containing restrictive covenants, which is attached to the Complaint as Exhibit A ("the Agreement").

3. This Court has subject-matter jurisdiction under 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000 and is between citizens of different states.

4. This Court has personal jurisdiction over Sanders, as the parties' dispute is subject to a forum selection clause stating that "[a]ny controversy, claim or dispute arising out of or relating to this Agreement shall be litigated solely in a state or federal court located in Michigan" and that "You [Sanders] hereby (1) submit to the jurisdiction of such court…." *See* Exhibit A, p. 8, ¶ 16.

5. The Court also has personal jurisdiction over Sanders because this case arises out of her contacts with the State of Michigan: She was a resident of Michigan when she signed the Agreement; the Agreement was signed in Michigan; and Sanders was an employee of Elara Caring in Michigan when she signed.

6. This Court is an appropriate venue for this action as Sanders has consented to have any disputes arising out of her Agreement litigated in a federal court in Michigan, and in her Agreement she has "waive[d] the defense of an inconvenient forum or venue." *See* Exhibit A, p. 8, ¶ 16.

## GENERAL ALLEGATIONS

7. Elara Caring is one of the nation's largest providers of home-based health care and hospice care.

8. Elara Caring works throughout the state of Michigan and across the Midwest, Northeast, and Southern United States to provide the highest quality comprehensive care continuum of personal care, skilled home health care, hospice care, and behavioral health for its patients. Elara Caring leads patients through the post-acute care journey and is dedicated to providing patients with the right care, at the right time, in the right place.

9. Sanders worked at Elara Caring from June 16, 2014 until February 27, 2019, when she voluntarily resigned.

10. Sanders was last employed at Elara Caring as a Sales Marketing Analyst. In that role, she provided administrative support and analysis for Joseph Mooney, the Chief Sales Officer at Elara Caring, and other top executives, including Elara Caring's CEO. Her duties included creation and revision of written documents including presentations, reports, memorandums, and correspondence. In

the course of her duties, she had access to highly confidential and sensitive business information of Elara Caring, the disclosure of which would harm Elara Caring's competitive busines interests.

11.    Considering her access to highly confidential and sensitive business information of Elara Caring, on June 10, 2016, Sanders signed an Agreement with Elara Caring that contained non-compete, non-solicit, and confidentiality clauses, and she accepted those restrictive covenants as conditions of her employment.

12.    The Agreement's Non-Competition Clause provided that, for the term of the Agreement and for two years after the end of Sanders's employment, Sanders could not, "directly or indirectly… [e]ngage in any self-employment, employment with any other entity, work as a consultant or independent contractor, or have full or partial ownership of any entity that provides, or consults in providing, home health care, hospice care, [or] palliative care… within [Elara Caring's] market area." Exhibit A, pp. 6-7, ¶ 11.

13.    Elara Caring's market area, as defined in the Agreement, were "those counties in which [Elara Caring] has received Medicare certification at the time of Your voluntary or involuntary separation from [Elara Caring]." *Id.*

14.    The Agreement's Confidentiality Clause provided that, during her employment and for two years thereafter, Sanders could not, among other things:

3

(a) "use or furnish to anyone… any confidential and proprietary information or trade secrets relating to [Elara Caring's] business"; and

(b) "directly or indirectly… use or disclose any Confidential Information of [Elara Caring]."

Exhibit A, pp. 3-4, ¶ 5.

15.   The Agreement defines "Confidential Information" as including "names, addresses and telephone numbers of employees and clients; marketing information; referral sources; patient lists; human resources information; training information; business plans; pricing or cost information; margins; ideas; policies and protocols; computer programs; databases; proposed new services and methods of delivery of services; information related to geographical areas targeted for expansion; information regarding new technology; business operations; documents labeled 'confidential' or 'proprietary;' and other confidential business information." Ex. A, p. 4-5, ¶ 5.

16.   During the course of her employment, and in connection with her duties assisting Chief Sales Officer Mooney, Sanders had access to, and used on a regular basis, Elara Caring's most confidential and sensitive business information, including information concerning Elara Caring's business affairs and operations, client lists, referral sources, client and referral source leads, operational and sales procedures and processes, marketing strategies, sales strategies, pricing and

4

contractual details for existing clients, margins, and recruiting plans and practices. Through her employment, Sanders also acquired intimate knowledge of Elara Caring's clients' service needs and preferences, pricing and profit information, and employee information.

17. Elara Caring provided Sanders with extensive training and knowledge of, and Sanders helped develop, Elara Caring's Confidential Information.

18. All the Confidential Information that Sanders was exposed to, helped develop, and acquired is of great value to Elara Caring and, if disclosed, would be of great value to Elara Caring's competitors who do not have access to this information. Accordingly, Elara Caring takes reasonable measures to ensure this information remains confidential. Such measures include the use of non-compete and confidentiality provisions in employment contracts.

19. The non-compete provision in Sanders's Agreement does not expire until February 27, 2021.

20. In September 2018, Chief Sales Officer Mooney announced that he would be resigning from Elara Caring at the end of the year. He did not disclose to Elara Caring, however, that he had decided to join an Elara Caring competitor named St. Croix Hospice, LLC ("St. Croix").

21. Mooney had an Employment Agreement with Elara Caring that contained non-compete, non-solicit, and confidentiality clauses.

5

22. Elara Caring is in pending litigation against Mooney, and during discovery in that case, learned of misconduct by Sanders in breach of her Agreement.

23. During the period between Mooney's announcement that he was resigning, but before his last day, Sanders repeatedly sent confidential Elara Caring material to Mooney's personal email account.

24. Sanders also sent confidential Elara Caring material to her own personal email account, with the intent of later providing the material to Mooney.

25. Sanders sent this confidential Elara Caring material to Mooney's personal email account—and to her own personal email account with the intent to later provide it to Mooney—despite knowing that Mooney was leaving Elara Caring.

26. Soon after Mooney left Elara Caring, he began working as the Chief Development Officer for St. Croix, in violation of his own non-competition agreement.

27. Sanders left Elara Caring shortly after Mooney's departure, and joined St. Croix, in a role where she provides support to Mooney.

28. At the time of Sanders's voluntary resignation, Elara Caring and St. Croix had received Medicare certification in Shawnee County, Kansas. Since Sanders joined St. Croix, St. Croix's competitive overlap has extended to Cass

6

County, Missouri; and Jackson County, Missouri. Elara Caring and St. Croix still have Medicare certification in these three counties. Discovery in the Mooney case also reveals St. Croix is seeking acquisitions in Illinois and Oklahoma, states where Elara Caring conducts extensive business. Thus, St. Croix is a direct competitor with Elara Caring per the terms of Sanders's Agreement.

29. Sanders, having joined Elara Caring competitor St. Croix in breach of her non-competition obligation, sent the confidential documents that she had taken from Elara Caring from her personal email account to her new St. Croix email account. She then forwarded those emails from her St. Croix email account to Mooney's St. Croix email account. This conduct violated the confidentiality clause of her Agreement.

30. Further, because Sanders is currently employed by St. Croix in a role assisting one of St. Croix's top executives in competition with Elara Caring, she has and will continue to disclose and make use of Elara Caring's confidential business information for the benefit of St. Croix in violation of her Agreement.

## COUNT I
## BREACH OF CONTRACT

31. Elara Caring restates the allegations in paragraphs 1 through 30 as if fully set forth herein.

32. The Agreement between Sanders and Elara Caring is a valid and binding contract supported by valuable consideration. Sanders's actions are in

7

direct violation of the Agreement, which includes a reasonable covenant not to compete enforceable under Michigan Compiled Laws 445.774a.

33. By signing the Agreement, Sanders expressly agreed, during her employment with Elara Caring and for a period of two years thereafter, (a) not to work with a competitor of Elara Caring; and (b) not to use or furnish to anyone any Elara Caring's Confidential Information.

34. In violation of the terms of the Agreement, Sanders is currently employed with St. Croix, a competitor of Elara Caring in Elara Caring's market area.

35. In Sanders's position, the highly sensitive and competitive business information that she had access to, and took, while employed at Elara Caring has and will inevitably influence the tactical and strategic decisions that St. Croix will make for the benefit of St. Croix and give St. Croix an unfair competitive advantage.

36. In further violation of the terms of her Agreement, Sanders has used and furnished to others confidential information of Elara Caring.

37. As a direct and proximate result of Sanders's violations of the Agreement, Elara Caring has suffered and will continue to suffer damages in excess of $75,000, including in the form of lost business, loss of profits, recruiting

costs, training costs, and lost good will of Elara Caring's clients, referral sources, and patient and customer relations.

38. Further, the Agreement provides that attorneys' fees incurred by Elara Caring in enforcing the Agreement must be reimbursed by Sanders, and this contractual obligation to pay incurred attorneys' fees will likewise add to the measure of damages.

39. In addition, some of Elara Caring's damages may be unquantifiable, causing irreparable harm. Therefore, unless restrained and enjoined, Sanders will continue to ignore her obligations to Elara Caring in the Agreement by using and furnishing Elara Caring's confidential information to compete with Elara Caring and to solicit Elara Caring's clients, patients, referral sources, and employees, and by continuing to cause the loss of the competitive value of such information. Elara Caring did not receive the benefit of its Agreement with Sanders, which also justifies an extension of the restrictive covenants. Accordingly, an injunction restraining Sanders from violating the Agreement no and into the future, is necessary to provide Elara Caring with meaningful relief.

## COUNT II
## TORTIOUS INTERFERENCE WITH CONTRACT

40. Elara Caring restates the allegations in paragraphs 1 through 39 as if fully set forth herein.

9

41. A contract existed between Elara Caring and Joseph Mooney, which contained among other things a confidentiality clause.

42. Sanders unjustifiably instigated a breach of Joseph Mooney's confidentiality agreement by knowingly and intentionally providing him with Elara Caring's confidential documents, as discussed herein.

43. Elara Caring has been damaged by Sanders's tortious interference with Mooney's contract, through her furnishing of confidential Elara Caring documents to Mooney, including its attorney fees it has expended in being forced to file a lawsuit against Mooney, lost business, loss of profits, and lost good will of Elara Caring's clients, referral sources, and patient and customer relations, and by providing Sanders's employer, St. Croix, with an unfair competitive advantage.

## **REQUEST FOR RELIEF**

Elara requests that this Court:

A. Award Elara Caring damages in excess of $75,000 to be proven at trial, in an amount sufficient to fully compensate Elara Caring for all losses suffered as a result of the actions of Defendants described in this Complaint.

B. Award Elara Caring (as damages or otherwise) its costs and attorneys' fees to which it is contractually entitled to recover in connection in enforcing the Agreement due to Sanders's breaches.

Elara further requests that this Court issue an injunction:

C. Enjoining Sanders from continuing employment or otherwise engaging in business with St. Croix or its affiliates until further order of the Court or for a period ending two years from the date such

    conduct is first enjoined, as the Court deems appropriate under the circumstances.

D. Enjoining Sanders from disclosing or using the Confidential Information of Elara Caring acquired during her employment with Elara Caring until further order of the Court.

E. Requiring Sanders to immediately return all of Elara Caring's Confidential Information, in whatever form, acquired during her employment with Elara Caring, and all copies, summaries, and excerpts thereof.

Elara Caring finally requests that the Court order such other relief, whether legal or equitable, as may be necessary or appropriate to fully protect Elara Caring's interests and to compensate Elara Caring for and protect Elara Caring against the wrongful conduct of Sanders.

           Respectfully submitted,

           KIENBAUM HARDY VIVIANO PELTON & FORREST, P.L.C.

           By: *Ryan D. Bohannon*
             Eric J. Pelton (P40635)
             Thomas J. Davis (P78626)
             Ryan D. Bohannon (P73394)
           Attorneys for Plaintiff
           280 N. Old Woodward Ave., Ste. 400
           Birmingham, MI  48009
           (248) 645-0000
           epelton@khvpf.com
           tdavis@khvpf.com
           rbohannon@khvpf.com

Dated: January 21, 2021

399139

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GREAT LAKES ACQUISITION CORP. d/b/a/ ELARA CARING, | Case No. _____ |
| Plaintiff, | Hon. _____ |
| v. | |
| NATASHA (OGINSKY) SANDERS, | |
| Defendant. | |

KIENBAUM HARDY VIVIANO
PELTON, & FORREST, P.LC.
By: Eric J. Pelton (P40635)
     Thomas J. Davis (P78626)
     Ryan D. Bohannon (P73394)
Attorneys for Plaintiff
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
epelton@khvpf.com
tdavis@khvpf.com
rbohannon@khvpf.com

**DEMAND FOR JURY**

Plaintiff demands a trial by jury as to all facts and issues in this case.

Respectfully submitted,

KIENBAUM HARDY VIVIANO PELTON & FORREST, P.L.C.

By: */s/Ryan D. Bohannon*
     Eric J. Pelton (P40635)
     Ryan D. Bohannon (P73394)
280 N. Old Woodward Ave., Ste. 400
Birmingham, MI  48009
(248) 645-0000
epelton@khvpf.com
rbohannon@khvpf.com

*Attorneys for Plaintiff Great Lakes Acquisition Corp. d/b/a Elara Caring*

Dated: January 21, 2021

399139